IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF THE CELLULAR PHONE ASSIGNED CALL NUMBER 304-844-3178 UTILIZED BY KEVIN MISKE | Case No. 1:19 mj 152<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEARCH WARRANT

I, **Andrew G. Henderson**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **304-844-3178 ("Target Cell Phone")** and in use by **Kevin Miske**, whose service provider is **Sprint**, a wireless telephone service provider headquartered at **6200 Sprint Parkway, Overland Park Kansas 66251.** The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.   ,

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The

1

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a magistrate judge of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## AFFIANT BACKGROUND

4. Your affiant, Andrew G. Henderson, is Deputy United States Marshal (DUSM) with the United States Marshals Service (USMS), and have been since March 2011. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

5. Your affiant is charged with enforcing federal laws in all jurisdictions of the United States, its territories and possessions. I am currently assigned to the Northern District of West Virginia, Operations Section for the USMS. I have conducted criminal and fugitive investigations throughout my career. I have been the affiant on previous search warrants regarding the tracking and locating of federal fugitives based on their use of cellular phones. Throughout my career, I have encountered numerous methods that fugitives have used to hinder law enforcement efforts to track their whereabouts including, but not limited to, turning the phones on and off when not in use, having the phones subscribed in family members or friends' names, and carrying and using multiple cellular phones on their person.

6. The facts in the affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. The affidavit is intended to

show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about the matter.

7. Based on the facts set forth in the affidavit, there is probable cause to believe that the user of the Target Cell Phone, **Kevin Miske**, has violated his bond following his conviction and sentence for the offense of Unlawful Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and is the subject of an arrest warrant issued on 09/24/19. There is also probable cause to believe that **Kevin Miske** is aware of these charges and has fled. There is also probable cause to believe that the Target Cell Phone's location will assist law enforcement in arresting **Kevin Miske**, who is a fugitive and thus a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. The Court has jurisdiction to issue the Provider Tracking Warrant for the records and location information sought pursuant to Rule 41 and 18 U.S.C. § 2703(c)(1)(A) because it is a court "with jurisdiction over the offense under investigation," 18 U.S.C. § 2711(3)(A)(i). The Court also has jurisdiction to issue the Provider Tracking Warrant and the Investigative Device Warrant pursuant to Rule 41 because the Target Cell Phone is located within the judicial district.

## STATEMENT OF PROBABLE CAUSE

9. The United States (specifically, the United States Marshals Service) is investigating **Kevin Miske** who is wanted upon a federal arrest warrant issued for a bond violation.

10. On August 15, 2019, Kevin Miske appeared before United States District Judge Irene M. Keeley for a sentencing hearing in 1:19CR18 in the Northern District of West Virginia. The Court sentenced **Kevin Miske** to the Bureau of Prisons for a period of 46 months. On that date, the Court continued **Kevin Miske** on bond pending his designation by the Bureau of Prisons.

11. On 09/24/2019, a Petition for Action was filed alleging **Kevin Miske** failed to self-report to the Bureau of Prisons as directed on September 23, 2019 by 12:00 p.m., and his whereabouts were unknown. An arrest warrant was issued for **Kevin Miske**.

12. On 09/25/2019, the fugitive case for **Kevin Miske** was assigned to your affiant.

13. On 9/26/2019, **Kevin Miske**'s supervising pretrial officer provided your affiant **Miske**'s cellular phone number 304-844-3178.

14. In the afternoon hours of 9/26/2019, your affiant received a phone call from **Kevin Miske** from the number of 304-844-3178. **Miske** claimed that he was waiting for a ride to Clarksburg, WV to turn himself in to the USMS office. **Miske** never appeared at the USMS office.

15. During the morning hours of 9/27/2019, **Kevin Miske** called your affiant again from the number of 304-844-3178. **Miske** claimed that he was in Salem, WV, and was on his way to Clarksburg, WV to turn himself in to the USMS office. DUSM Henderson told **Miske** to call your affiant if his ride failed to show, and your affiant would provide a ride to **Miske**. **Miske** failed to appear at the USMS office, failed to call your affiant, and would not answer his phone when your affiant tried to reach **Miske**.

16. During the evening hours of 9/27/2019, **Kevin Miske** texted your affiant from the phone number of 304-844-3178, the Target Cell Phone, and asked if he could turn himself in directly to North Central Regional Jail. DUSM Henderson advised **Miske** that he could turn himself in at the North Central Regional Jail.

17. On 10/02/2019, **Kevin Miske** appeared at the North Central Regional Jail. **Miske**, however, left the facility before a staff member could take him into custody.

18. On 10/16/2019, your affiant verified that services were provided to 304-844-3178 by **Sprint**.

19. In my training and experience, I have learned that **Sprint** is a company that provides cellular Cell Phone service to the general public, and is therefore a provider of "electronic communication service" pursuant to 18 U.S.C. §§ 2510(15) and 2703(c). I have been advised that **Sprint**, which services the Target Cell Phone, has the technical means promptly to generate and record latitude and longitude data, to include Global Positioning System (GPS), Round Trip Time Location Information (RTT), and Precision Location Information (PLI), with respect to a specified wireless Cell Phone by measuring its position relative to other known reference points. The information provided can be used to verify the vicinity of the Target Cell Phone. It will not provide the Target Cell Phone's exact pin-point location. For example, the information provided by **Sprint** will not indicate where the user is precisely located within a particular residence, but instead may provide the general area where the user is located and is an approximate range which can be as low as a few meters, and up to thousands of meters of the user.

20. In my training and experience, I also know that providers of cellular phone service have technical capabilities that allow them to collect and generate information about the locations of the cellular phones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular phone and, in some cases, the "sector" (i.e., faces of the towers) to which the cell phone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular Cell Phone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data. I

also know that wireless providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use the information for various business-related purposes.

21. Based on my training and experience, I also know that wireless providers typically collect and retain information about their subscribers in their normal course of business. The information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless Cell Phone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure

of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct **Sprint** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **Sprint**. I also request that the Court direct **Sprint** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Sprint's** services, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

26. I further request that the Court order that all papers in support of the application, including the affidavit and search warrant, and motions and orders to seal and delayed notice requests, be sealed seal for a period not to exceed one year from the date of the entry herein. These documents discuss an ongoing fugitive apprehension matter that is not public. Revealing the methods used to track the fugitive could pose a danger to agents, and cause the fugitive to alter his conduct. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Andrew G. Henderson
Deputy United States Marshal

Sworn and subscribed before me on October 22, 2019.

_____
MICHAEL J. ALOI
United States Magistrate Judge for the
Northern District of West Virginia